1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA-SOUTHERN DIVISION**

| | | |
|---|---|---|
| JOSEFINA OCHOA ZERTUCHE, | ) | Case No. SA CV 16-00539-AS |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| v. | ) | |
| | ) | **ORDER OF REMAND** |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration,) | | |
| | ) | |
| Defendant. | ) | |

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED that this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

On March 23, 2016, Plaintiff filed a Complaint seeking review of the denial of her application for Disability Insurance Benefits. (Docket Entry No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Docket Entry Nos. 11-12).

On August 4, 2016, Defendant filed an Answer along with the Administrative Record ("AR"). (Docket Entry Nos. 13-14). The parties filed a Joint Stipulation ("Joint Stip.") on November 3, 2016, setting forth their respective positions regarding Plaintiff's claims. (Docket Entry No. 15).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15; "Order Re: Procedures In Social Security Case," filed March 24, 2016, 2016 (Docket Entry No. 8).

### BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On December 3, 2012, Plaintiff, formerly employed as a home caregiver and a cashier in a market (see AR 38, 42, 159), filed an application for Disability Insurance Benefits, alleging an inability to work because of her disabling condition since November 30, 2011. (See AR 142-43). On January 23, 2014, the Administrative Law Judge ("ALJ"), John Kays, heard testimony from Plaintiff and vocational expert Alan Boroskin. (See AR 36-64). On September 26, 2014, the ALJ issued a decision denying Plaintiff's application. (See AR 21-29). After determining that Plaintiff had a severe impairment -- anxiety disorder (AR 23) -- but did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments (AR 23-25), the ALJ found that Plaintiff had the residual functional capacity ("RFC")[1] to perform a full range of work at all exertional levels with the following nonexertional limitations:

---

[1] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

moderately complex tasks (4 to 5 steps); frequent but not constant interaction with supervisors, peers, and the public; and frequent but not constant changes in the work setting. (AR 25-29). Finding that Plaintiff was capable of performing her past relevant work as a companion, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 29).

Plaintiff requested that the Appeals Council review the ALJ's decision. (AR 9). The request was denied on February 17, 2016. (AR 1-5). The ALJ's decision then became the final decision of the Commissioner, allowing this Court to review the decision. See 42 U.S.C. §§ 405(g), 1383(c).

**PLAINTIFF'S CONTENTIONS**

Plaintiff alleges that the ALJ erred in failing to properly consider: (1) the statements of lay witness Linda Romero; (2) Plaintiff's testimony regarding her pain and limitations; (3) the opinions of Plaintiff's treating physician, Dr. Elliot Romero; and (4) Plaintiff's limitation in maintaining and sustaining concentration, persistence and pace; and (5) that the ALJ erred in finding that Plaintiff was capable of performing her past relevant work. (See Joint Stip. at 2-12, 19-24, 29-32, 36-40, 43-45).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that Plaintiff's second claim of error warrants a remand for further

consideration.    Since  the  Court  is  remanding  the  matter  based  on
Plaintiff's  second  claim  of  error,  the  Court  will  not  address
Plaintiff's first, third, fourth or fifth claims of error.

**A.    The ALJ Did Not Properly Assess Plaintiff's Credibility**

Plaintiff  asserts  that  the  ALJ  failed  to  properly  find  that
Plaintiff's  testimony  was  not  fully  credible.  (<u>See</u> Joint  Stip.  at  8-
12).  Defendant  asserts  that  the  ALJ  provided  proper  reasons  for  finding
Plaintiff  not  fully  credible.  (<u>See</u> Joint  Stip.  at  12-19).

Plaintiff  made  the  following  statements  in  a  "Function  Report  -
Adult" dated March 11, 2013 (<u>see</u> AR 164-72):

She  lives  with  her  family  in  a  house.   Her  day  consists
of  sitting  around  a  lot,  thinking,  and  being  sad,  moody  and
complaining.   She  does  not  take  of  anyone  else  or  any  pets.
Her  impairment  limits  her  ability  to  work  because  she  lacks
desire  and  interest,  gets  irritated  immediately,  has  constant
headaches,  anxiety  and  stress.   Her  condition  affects  her
sleep.   (<u>See</u> AR 164-65).

She  has  no  problem  with  her  personal  care,  does  not  need
any  special  reminders  to  take  care  of  her  personal  needs  and
grooming,  and  does  not  need  help  or  reminders  taking  medicine.
(<u>See</u> AR 166).

She prepares her own meals daily, which takes 30 minutes, but she does not "cook with interest." She does cleaning and laundry daily for 2 hours, at most, without needing help. She goes outside daily, either walking or driving a car. She can drive a car alone. She shops in stores for food, which takes 1 hour a week, and for clothing and shoes for herself and her children (not often). (See AR 166-67).

She can pay bills, handle a savings account and use a checkbook. Her ability to handle money has changed since the condition began. (See AR 167-68).

Her hobbies and interests are watching television and going to see her dad at his house, both of which she does daily. She spends time talking in person and on the phone with others on a daily basis. She sometimes goes alone to the church (where her dad is). She does not have any problems getting along with others. Since her condition began, she does not enjoy interacting with others as much as she did. (See AR 168-69).

Her condition affects her squatting, kneeling, talking, stair-climbing, seeing, memory, completing tasks, concentration, understanding, following instructions, and getting along with others. Her back hurts when she bends, and she has a short attention span and a problem concentrating. (See AR 169).

5

She can walk 2 blocks before needing to rest.  She can pay attention for 10 to 15 minutes.  She cannot finish what she starts.  She does not follow written instructions very well because she loses interest.  When asked how well she follows spoken instructions, she stated she prefers simple instructions or else she loses interest.  She gets along okay with authority figures.  She has not been fired or laid off from a job because of problems getting along with other people.  (See AR 169-70).

She does not handle changes in routine very well.  Her unusual fears are a fear of life all day and night.  (See AR 170).

Plaintiff testified at the August 11, 2014 administrative hearing as follows (see AR 37-47):

She is married and has two children, ages 14 and 16.  Her husband works.  She grew up in Southern California.  (See AR 40-41).

She last worked full-time at the market on October 11, 2011.  She initially worked as a cashier.  Two months to one year prior to October 11, 2011, she was removed as a cashier because she made a lot of mistakes.  While she originally stated that post-cashiering she did deli work, did playing cards, and helped in different departments, she later stated she cleaned restrooms, gutters and shelves, got the carts out,

and took out trash.  She stopped working on October 11, 2011 because of severe stress, anxiety, panic attacks and depression.  The cause of her panic attacks and anxiety was her childhood, her mental illness which runs in her dysfunctional family (her mother), and her inability to focus. She attempted to go back to work in the market as a cashier for two days in November 2011, but she was not able to work because she was panicked, stressed, and could not stand being around other people.  She worked as a caretaker at one time (she could not remember when).  (<u>See</u> AR 38-42, 44-45, 48-49).

She takes her children to school, but does not help out in any of their activities.  During the day, she wakes up, brushes her teeth, takes a shower, tries to do a "little bit of housework," and then sits down.  (<u>See</u> AR 40).

She no longer interacts with anybody besides her husband and two children.  She avoids contact with everybody else (including her three sisters and two brothers) because every day she is depressed and does not feel good about herself. She sometimes asks herself, "Why am I alive?" and "Why am I here?"  She has told people she felt suicidal.  She never has had any real friends.  (<u>See</u> AR 41-43, 46).

Although she is still married, she and her husband have been sleeping in separate rooms for two years.  Her father, who has dementia and Alzheimer's, is in a facility.  (<u>See</u> AR 42-43).

7

She takes Ativan, 2 mg, twice a day, and Lithium for her condition.   Ativan was originally prescribed by Dr. Romero, but Dr. Patara requested that she increase it to 4 a day (which was too much for her based on her having to drive her children to school) and then to 3 a day.   Ativan makes her drowsy (it relaxes her "too much") and affects her concentration and memory.   Ativan only works for approximately half an hour before her panic attacks and phobias (fears) resume.   She takes Cymbalta for her condition only when Dr. Romero gives her samples; it is expensive and she cannot afford it.   At some time she was taking Xanax (prior to Ativan) and Elavil.   She takes Seroquel once a day to help her sleep, but she wakes up often during the night because of her panic attacks and anxiety.   She takes Lunesta to help her sleep only when Dr. Romero gives her samples. (See AR 58-62).

After briefly summarizing Plaintiff's testimony (see AR 25)[2],

---

[2]    The ALJ wrote:

The claimant alleged that she is unable to work because of anxiety, stress, depression and sleep problems (Exhibit 2E/2).   She reported that she does not have desire or interest.   She gets irritated and has anxiety all of the time. She is always stressed (Exhibit 3E/1).   She has lost interest in socializing, cooking, and spending time with her own family.   She has no desire of walking as she used to walk (Exhibit 8E/1).   Her voice changes when she becomes anxious and fearful (Exhibit 10E/1).   At the hearing, the claimant testified that she cannot work anymore because of severe stress, anxiety, panic attacks and depression.   She does not want to go out or see anybody.   She hardly interacts with her siblings.   She has never had any friends.   She has no hobbies or interests.   Side effects from her medications include drowsiness.

(AR 25).

8

the ALJ wrote, "The evidence of record does not fully support the claimant's allegations." (AR 25).   After summarizing the medical evidence (see AR 26-27), the ALJ addressed Plaintiff's credibility as follows:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's and her aunt's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.
>
> In terms of the claimant's credibility, I find the claimant's allegations less than fully credible.  The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual.  The record reflects significant gaps in the claimant's history of treatment and relatively infrequent trips to the doctor for the allegedly disabling symptoms.  Furthermore, the claimant's use of medications does not suggest the presence of impairments which is more limiting that found in this decision.
>
> Despite her impairments, the claimant has also engaged in a somewhat normal level of daily activity and interaction. The claimant admitted activities of daily living including personal care, childcare, cooking, cleaning, laundry, paying bills, watching television, walking, driving shopping, spending time with others, talking on the telephone, and going

to church and her father's center (Exhibits 3E, 2F/3-4, and Testimony).   Some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment.   I find the claimant's ability to participate in such activities diminishes the credibility of the claimant's allegations of functional limitations.

(AR 27-28).

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of the subjective symptoms.  Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991).  Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her pain and symptoms only by articulating specific, clear and convincing reasons for doing so.  Brown-Hunter v. Colvin, 798 F.3d 749, 755 (9th Cir. 2015)(citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)); see also Smolen v. Chater, supra; Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). Because the ALJ does not cite to any evidence in the record of malingering, the "clear and convincing" standard stated above applies.

1    Here, the ALJ failed to provide clear and convincing reasons for
2    finding that Plaintiff's testimony about the intensity, persistence and
3    limiting effects of her symptoms was not fully credible.[3]

4

5    First, the ALJ failed to "specifically identify 'what testimony is
6    not credible and what evidence undermines [Plaintiff's] complaints.'"
7    Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) (quoting Lester v.
8    Chater, 81 F.3d 821, 834 (9th Cir. 1995)); see also Smolen v. Chater,
9    supra, 80 F.3d at 1284 ("The ALJ must state specifically what symptom
10   testimony is not credible and what facts in the record lead to that
11   conclusion").

12

13   Second, the ALJ's partial discrediting of Plaintiff's testimony
14   based on Plaintiff's "significant gaps in [her] history of treatment and
15   relatively infrequent trips to the doctor for the allegedly disabling
16   symptoms" was improper, because the ALJ did not ask Plaintiff why there
17   were gaps in her treatment or why she did not seek more medical
18   treatment. See Social Security Ruling 96-7p (". . . [I]f the frequency
19   or extent of the treatment sought by an individual is not comparable
20   with the degree of the individual's subjective complaints, or if the
21   individual fails to follow prescribed treatment that might improve
22   symptoms, we may find the alleged intensity and persistence of an
23   individual's symptoms are inconsistent with the overall evidence of
24   record.  We will not find an individual's symptoms inconsistent with the
25   evidence in the record on this basis without considering possible

26

27        [3]    The Court will not consider reasons for finding Plaintiff not
     fully credible that were not given by the ALJ in the Decision.  See
28   Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001); SEC v. Chenery
     Corp., 332 U.S. 194, 196 (1947).

reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints."). The gaps in Plaintiff's treatment or Plaintiff's failure to seek more medical treatment may have been the result of her financial issues (see AR 56 [At the hearing, Plaintiff testified that she does not have medical insurance and that she was able to obtain treatment from Dr. Patara only because her daughter had asked Plaintiff's husband for money for such treatment, and that the lack of money limited the frequency of her visits to Dr. Patara], 61 [At the hearing, Plaintiff testified that because of the expense she took Cymbalta and Elavil only when Dr. Romero gave her samples]). See Smolen v. Chater, supra ("Where a claimant provides evidence of a good reason for not taking medication for her symptoms [such as Plaintiff's testimony that "she had not sought treatment (and therefore was not taking medication) for her chronic fatigue and pain because, as a result of not being able to maintain a job, she had no insurance and could not afford treatment"], her symptom testimony cannot be rejected for not doing so."); see also Regennitter v. Commissioner of Soc. Sec. Admin., 166 F.3d 1294, 1297 (9th Cir. 1998)(". . . [W]e have proscribed the rejection of a claimant's complaints for lack of treatment when the record establishes that the claimant could not afford it[.]"); Gamble v. Chater, 68 F.3d 319, 322 (9th Cir. 1995)("It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him.")(quoting Gordon v. Schweiker, 725 F.2d 231, 237 (4th Cir. 1984)).

Third, the ALJ's partial discrediting of Plaintiff's testimony based on her use of medications was improper. The ALJ has failed to explain how Plaintiff's use of the prescribed medications she is taking for her condition -- Ativan, Seroquel, Cymbalta, Elavil -- were not suggestive of limitations greater than those found by the ALJ. To the extent that the ALJ's credibility determination was based on Plaintiff's failure to take certain medications, Plaintiff's alleged inability to afford such medications, as discussed above, may have constituted a valid explanation for her failure to take such medications. See Smolen v. Chater, supra.

Fourth, to the extent the ALJ partially discredited Plaintiff's testimony based on the conservative nature of her treatment, the ALJ's reason was not clear and convincing. Evidence of conservative treatment may be considered in a credibility determination. Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment[.]"). However, the ALJ has failed to show that Plaintiff only obtained a conservative course of treatment for her mental impairment. See Childress v. Colvin, 2014 WL 4629593, *12 (N.D. Cal. Sept. 16, 2014) ("There is no guiding authority on what exactly constitutes 'conservative' or 'routine' treatment."); Boitnott v. Colvin, 2016 WL 362348, *4 (S.D. Cal. January 29, 2016) (explaining that "[t]here was no medical testimony at the hearing or documentation in the medical record that the prescribed medication constituted 'conservative' treatment of [the plaintiff's] conditions," and that the ALJ "was not qualified to draw his own inference regarding whether more aggressive courses of treatments were available for Plaintiff's conditions"). At

13

the hearing, the ALJ did not ask Plaintiff why her treatment for her anxiety disorder was conservative, or why she had not obtained other kinds of treatment for her anxiety disorder.

Fifth, the ALJ's partial discrediting of Plaintiff's testimony based on her ability to perform certain daily activities, such as personal care, child care, cooking, cleaning, laundry, paying bills, watching television, walking, driving, shopping, spending time with others, talking on the telephone, and going to church and her father's center, was not a clear and convincing reason. See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled."); Reddick v. Chater, supra ("Only if the level of activity were inconsistent with the Claimant's claimed limitations would these activities have any bearing on Claimant's credibility.").

It is not clear whether the ALJ considered Plaintiff's testimony about her limited abilities to perform such daily activities (see AR 165-66 [although Plaintiff testified that she does not have any problem with personal care, she did not state how long it took her]; AR 166 [Plaintiff testified that she cooks for a half an hour but lacks interest]; Id. [Plaintiff testified that she cleans and does laundry every day for 2 hours at most]; AR 40 [at the hearing, Plaintiff testified that she "tr[ies] to do a little bit of housework"]; AR 167 [Plaintiff testified that she shops for food every week for one hour]; AR 168 [although Plaintiff testified that she watches television and

14

sees her dad at his residence every day, she did not state for how long, and she appeared to state she lacks interest in those activities); AR 167-68 [Plaintiff testified that she talks with others in person and/or on the telephone every day (but she did not say for how long, but she does not enjoy interacting with others as much as before); AR 41-42 [at the hearing, Plaintiff testified she hardly interacts with her sisters and brother]); AR 168 [Plaintiff testified that she regularly goes to church (but she did not state when or for how long); and AR 40 [at the hearing, Plaintiff testified that she drives her children to school, but she does not help them with their extracurricular activities]). Therefore, the degree to which Plaintiff could perform such daily activities may not have been inconsistent with her testimony regarding her limitations. See Reddick v. Chater, supra; see also Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999)("If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations.").

Sixth, although the ALJ also found that there was a lack of objective medical evidence supporting Plaintiff's testimony concerning her symptoms and limitations, the lack of supporting objective medical evidence cannot, by itself, support an adverse credibility finding. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998).

**B.   Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).   Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.   Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").   However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate.   McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); Harman v. Apfel, supra, 211 F.3d at 1179-81.

Since the ALJ failed to properly assess Plaintiff's credibility, remand is appropriate.   Because outstanding issues must be resolved before a determination of disability can be made, and "when the record as a whole creates serious doubt as to whether the [Plaintiff] is, in fact, disabled within the meaning of the Social Security Act," further administrative proceedings would serve a useful purpose and remedy defects.   Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014)(citations omitted).[4]

---

[4]      The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time. "[E]valuation of the record as a whole creates serious doubt that Plaintiff is in fact disabled." See Garrison v. Colvin, 759 F.3d 995, 1021 (2014).   Accordingly, the Court declines to rule on Plaintiff's claims regarding the ALJ's failure to properly consider the statements of a lay witness (see Joint Stip. at 3-5, 6-8), the opinions of Plaintiff's treating physician (see Joint Stip. at 21-24, 29-30), and Plaintiff's limitation in maintaining and sustaining concentration,
(continued...)

**ORDER**

    For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).


    LET JUDGMENT BE ENTERED ACCORDINGLY.


DATED: January 19, 2017

                              /s/
                              ALKA SAGAR
                UNITED STATES MAGISTRATE JUDGE

---

    [4] (...continued)
persistence and pace (<u>see</u> Joint Stip. at 31-32, 36-37), and the ALJ's error in finding that Plaintiff was capable of performing her past relevant work (<u>see</u> Joint Stip. at 38-40, 43-45). Because this matter is being remanded for further consideration, these issues should also be considered on remand.